# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

Thomas John Kelly,                          Civ. No. 08-5028 (JMR /JJK)

       Plaintiff,

v.

Ramsey County Sheriffs Office; Frerich,          **REPORT AND**
Correctional Officers; John Doe,                 **RECOMMENDATION**
Correctional Officers; St. Paul Police
Department; Distell, Saint Paul Police
Officers; Doe, Saint Paul Police Officers;
and Rob, Jail Nurse,

       Defendants.

---

Thomas John Kelly, 227367, MCF-St. Cloud, 2305 Minnesota Blvd. SE, St. Cloud, MN  56304-2424, *pro se.*

C. David Dietz, Esq., Ramsey County Attorney, counsel for Defendants Ramsey County Sheriffs Office, St. Paul Correctional Officers Frerich and John Doe, and Jail Nurse Rob.

Cheri M. Sisk, Esq., City of St. Paul Attorney's Office, counsel for Defendants St. Paul Police Department, and St. Paul Police Officers Distell and Doe.

---

United States Magistrate Judge Jeffrey J. Keyes

## I.    INTRODUCTION

Plaintiff brought this action *pro se* under 42 U.S.C. § 1983, claiming that his constitutional rights were violated when he was booked into the Ramsey County Jail on March 19, 2008.  He contends that, at that time, several police officers assaulted him and he was denied adequate medical assistance for the

injuries sustained from the assault.  (Doc. No. 1, Attach. 3.)  The Defendants,

who include the Ramsey County Defendants (the Ramsey County Sheriffs Office,

Ramsey County Correction Officers Frerich and John Doe ("John Doe I"), and

Nurse Robert Moxley-Goldsmith) and the St. Paul Police Department Defendants

(the St. Paul Police Department and St. Paul Police Officers Distell and Doe

("John Doe II")), have each filed a motion seeking to have this action dismissed

pursuant to Rule 12(b)(6) or alternatively Rule 56 of the Federal Rules of Civil

Procedure.  (Doc. Nos. 8 and 15.)  The matter has been referred to this Court for

a report and recommendation under 28 U.S.C. § 636 and Local Rule 72.1.  For

the reasons discussed below, the Court recommends that the Defendants'

motions be granted in part and denied in part.  Specifically, the motions to

dismiss the claims against the municipal Defendants, Ramsey County Sheriffs

Office and the St. Paul Police Department, should be granted, and the motions to

dismiss the claims against the individual Defendants should be denied.

## II.    THE COMPLAINT

Because this Court is addressing only whether this case should be

dismissed for failing to state a claim for which relief may be granted,[1] the

following factual background is derived from Plaintiff's Complaint.  On March 19,

2008, Plaintiff was being held in the Ramsey County Law Enforcement Center

("LEC").  (Doc. No. 1, Attach. 3 at 1.)  Plaintiff alleges that while he was in the

---

[1]        *See infra* Part III.

pre-booking area, he informed St. Paul Police Officers Distell and unidentified officer John Doe II that he was not feeling mentally stable.  (*Id.*)  He claims that two Ramsey County Correctional Officers, Officer Frerich and unidentified Office John Doe I, entered the pre-booking area's cell and began to physically assault him.  Frerich and the other officer then pulled Plaintiff out of the pre-booking cell and injured him further by dragging his face along a corridor wall and slamming his head into the end corner of the hall between the pre-booking area and the booking station.  All of this was done, according to Plaintiff, under the observation of St. Paul Police Officers Distell and John Doe I.  (*Id.*)

Frerich and John Doe I then, according to the Complaint, forcefully pushed Plaintiff into a small holding cell where he was forced into a lying position, face down, with his hands handcuffed behind his back, and legs forced up behind him. (*Id.*)  Frerich and his colleague used their closed fists and legs to beat Plaintiff on his ribs and thighs while Officers Distell and John Doe II stood in the entry of the cell blocking anyone from seeing the assault.  Plaintiff contends that he told all of these officers that he was healing from recent neck/spine surgery, that he was in severe pain from the assault, and that he was crying and begging the officers to stop, but they would not do so.  (*Id.*, Attach. 3 at 1-2.)

After the beating stopped, Plaintiff was asked standard booking questions, and then visited by a nurse named Rob.  Plaintiff explained to the nurse that he had recently undergone neck/spine surgery and sustained the beating described

3

above.  The nurse, however, ignored the complaints and allegedly did nothing.

Plaintiff later found out that the nurse ordered an X-ray of Plaintiff's neck, but

none of the injuries from the assault were addressed.  Plaintiff seeks

compensatory damages in the amount of $80,000, punitive damages in the

amount of $20,000, and "declaratory relief" stating that the Defendants' actions

were a violation of Plaintiff's federal and state constitutional rights including his

rights under the Eighth Amendment of the Constitution of the United States and

under Article I, Section 5 of the Minnesota State Constitution.  (*Id.*, Attach. 3 at

2.)

### III.   THE COURT DECLINES TO TREAT DEFENDANTS' MOTIONS AS MOTIONS FOR SUMMARY JUDGMENT UNDER RULE 12(d)

Defendants have styled their motions as motions to dismiss, or in the

alternative, for summary judgment.  (Doc. Nos. 8 and 15.)  In connection with

these motions, Defendants have submitted matters outside the pleadings

presenting a vastly different version of the events described in Plaintiff's

Complaint.  These extraneous materials include various police reports, hospital

reports, and booking admission reports attached to an affidavit of Assistant

Ramsey County Attorney C. David Dietz.  (Doc. No. 14, Aff. of C. David Dietz

("Dietz Aff.").)  This Court construes these submissions as a request that, while

addressing Defendants' motions, the Court consider matters outside the

pleadings, and thus convert the Rule 12(b)(6) motions into Rule 56 motions for

summary judgment.  *See* Fed. R. Civ. P. 12(d).

4

"'Rule 12(b)(6) motions are not automatically converted into motions for summary judgment simply because one party submits additional matters in support of or [in] opposition to the motion.'" *Casazza v. Kiser*, 313 F.3d 414, 417 (8th Cir. 2002) (quoting *Missouri ex rel. Nixon v. Coeur D'Alene Tribe*, 164 F.3d 1102, 1107 (8th Cir. 1999)) (alteration in original).  A court has wide discretion in deciding whether to consider matters outside the pleadings on motions to dismiss.  *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented *and not excluded by the court . . .*"); *Moubry ex. rel. Moubry v. Indep. Sch. Dist. No. 696(ELY)*, 951 F. Supp. 867, 890 n.17 (D. Minn. 1996) (citing *Skyberg v. United Food and Commercial Workers Int'l Union*, 5 F.3d 297, 302 n.2 (8th Cir. 1993)).  Before a court converts a motion to dismiss for failure to state a claim to a motion for summary judgment, the court is required to provide notice that it will consider matters outside the pleadings. *See Court v. Hall County, Neb.*, 725 F.2d 1170, 1174 (8th Cir. 1984).  As one district court has put it, the rule requiring such notice serves the primary purpose of protecting a plaintiff against "summary judgment by ambush."  *Bostic v. AT&T V.I.*, 166 F. Supp 2d 350, 354-55 (D.V.I. 2001).

Notwithstanding Defendants' designation of their motions as alternatively seeking summary judgment, the circumstances here do not support converting Defendants' motions.  Converting the motions would be a particularly unjust result given that neither this Court nor the District Court informed Plaintiff that the

5

motions would be treated as motions for summary judgment.  *See Court*, 725

F.2d at 1174 (requiring notice prior to converting 12(b)(6) motion to summary

judgment motion).  Moreover, Defendants filed their motions less than a month

after the case was removed to federal court (*See* Doc. Nos. 8 and 15), providing

only the briefest of opportunities for discovery to have taken place.  None of the

police officers involved in this matter have submitted any sworn testimony

verifying Defendants' assertion that their submissions demonstrate no assault

took place during Plaintiff's booking.  All that the Court has been presented with,

for purposes of these motions, is a diametrically conflicting factual scenario as

alleged in Plaintiff's Complaint and asserted by Defendants through their

extraneous submissions.  Thus, the matter is clearly not ripe for summary

judgment consideration.  Accordingly, this Court will not consider matters outside

the pleadings and will address Defendants' motions according to the standards of

Rule 12(b)(6).

The Ramsey County Defendants move for dismissal for failure to state a

claim under Rule 12(b)(6) on the grounds that: (1) Officers Frerich and John

Doe I, and Nurse Robert Moxley-Goldsmith, have been sued by Plaintiff in their

official capacities only, not in their individual capacities; (2) even if individual-

capacity claims have been properly asserted against them, Officers Frerich and

John Doe I are entitled to qualified immunity; (3) Plaintiff makes no showing that

Plaintiff's constitutional rights were violated by any custom, practice, or policy of

6

a municipality involved in this case; (4) Ramsey County is entitled to vicarious official immunity through the official immunity of its individual employees because they engaged in discretionary acts without malice or a willful commission of a constitutional violation; and (5) Plaintiff failed to exhaust all administrative remedies available to him.  (Doc. No. 12 at 9-23.)

The St. Paul Police Department Defendants also move, under Rule 12(b)(6), for dismissal for failure to state a claim on grounds that are similar to, but not exactly the same as, the grounds asserted by the Ramsey County Defendants.  They argue that: (1) the two St. Paul Police Department Officers, Distel and John Doe II, have been sued by Plaintiff in their official capacities only, not their individual capacities; (2) there is no evidence to support a § 1983 claim against the City of St. Paul, the officers' employer, as required by *Monell*; (3) Plaintiff has not alleged the violation of a constitutionally protected right against the individual Defendants; and (4) there is no personal jurisdiction over the St. Paul Police Department.  (Doc. No. 17 at 4-8.)

## IV.    MOTION TO DISMISS STANDARD

The purpose of Rule 12(b)(6) is to "eliminate actions which are fatally flawed in their legal premises and deigned to fail, thereby sparing litigants the burden of unnecessary pretrial and trial proceedings.  *Young v. City of St. Charles*, 244 F.3d 623 (8th Cir. 2001).  In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court should not dismiss claims "'unless it appears

beyond doubt that the Plaintiff can prove no set of facts in support of [the] claim which would entitle [the plaintiff] to relief.'" *Holloway v. Lockhart*, 792 F.2d 760, 761-62 (8th Cir. 1986) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  A plaintiff cannot rely upon general and conclusory allegations to survive a Rule 12(b)(6) motion, *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985), but the court must presume that factual allegations in the complaint are true and accord reasonable inferences in favor of the non-moving party.  *Holloway*, 792 F.2d at 762.  Thus, for purposes of these motions for dismissal of the Complaint, this Court must assume that the assault of Plaintiff occurred on March 19, 2008, at the LEC as alleged by Plaintiff.

## V.    PLANITIFF'S CLAIMS AGAINST INDIVIDUAL DEFENDANTS IN THEIR INDIVIDUAL CAPACITIES SHOULD NOT BE DISMISSED

Defendants argue that the Complaint does not specify whether the claims against the individual Defendants are either individual-capactiy or official-capacity claims.  They argue that in the absence of expressly stating the individual Defendants are being sued in their individual capacities, a suit against a public employee in his official capacity is merely a suit against the public employer.  Thus, they argue, any individual-capacity claims against the individual Defendants must be dismissed as a matter of law.

"Absent a clear statement that officials are being sued in their personal capacities," the Eighth Circuit "'interpret[s] the complaint as including only official-

8

capacity claims.'"  *Murphy v. State of Ark.*, 127 F.3d 750, 754 (8th Cir. 1997)

(quoting *Engerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995)).

The Eighth Circuit "strictly enforce[s] this pleading requirement because '[t]he

Eleventh Amendment presents a jurisdictional limit on federal courts in civil rights

cases against states and their employees.'"  *Id.* at 755 (quoting *Nix v. Norman*,

879 F.2d 429, 431 (8th Cir. 1989)) (alteration in original).  This rule is strictly

enforced against a *pro se* plaintiff despite the generally liberal construction of *pro

se* pleadings.  *Cf. Gisege v. Minn. Dep't of Corr.*, Civil No. 06-1353 (JRT/RLE),

2007 WL 2892024, *5 n.7 (D. Minn. Sep. 28, 2007) (noting as an alternative

grounds for dismissal that the *pro se* plaintiff failed to plead individual-capacity

claims with specificity in contradiction of clear Eighth Circuit law and citing

*Murphy*, 127 F.3d at 754-55).

    Plaintiff's Complaint does not specifically state that he is suing the

individual Defendants "in their individual capacities."  Although the Complaint fails

to specify that Plaintiff is asserting individual-capacity claims, and this failure to

so plead is fatal to individual-capacity claims under Eighth Circuit law, his intent

to assert such claims can be inferred easily from the nature of the allegations set

forth in the Complaint.  Similarly, in his response to Defendants' motions, Plaintiff

clearly indicated his intent to sue the individual Defendants in their individual

capacities.  (Doc. No. 25.)  Given this clear intent to assert individual-capacity

claims and Plaintiff's *pro se* status, this Court construes Plaintiff's response to

Defendants' motions as a motion to amend the Complaint to assert such individual-capacity claims.  Indeed, Plaintiff styled his response to Defendants' motions as a "Motion in Response to Defendants' Motion to Dismiss or in the Alternative for Summary Judgment."  (Doc. No. 25.)  It is unclear whether Plaintiff intended this as a request that the Court add individual-capacity claims based on his conception of this filing as a "motion" or believed he had adequately plead individual-capacity claims in his Complaint.  (*See id.*)  Under the circumstances, this Court believes Plaintiff's response states Plaintiff's desire to assert individual-capacity claims sufficiently to warrant deeming the response a motion to amend the Complaint.  Thus, Plaintiff's Complaint should be deemed amended to the extent that it asserts claims against the individual Defendants in their individual capacities.

## VI.    THE INDIVIDUAL-CAPACITY CLAIMS SHOULD NOT BE DISMISSED, ON QUALIFIED-IMMUNITY GROUNDS

### A.    Qualified Immunity Standard

The individual Defendants make several arguments for dismissal based on the doctrine of qualified immunity.  To prevail on qualified-immunity grounds at the motion-to-dismiss stage of the proceedings, "defendants must show that they are entitled to qualified immunity on the face of the complaint."  *Bradford v. Huckabee*, 394 F.3d 1012, 1015 (8th Cir. 2005).  The requisite threshold question for the application of a qualified-immunity defense in a suit against a law enforcement officer for an alleged violation of a constitutional right is: "Taken in

the light most favorable to the party asserting the injury, do the facts alleged show the officers' conduct violated a constitutional right?"  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  Even if a constitutional right was violated, the officer will still be entitled to qualified immunity unless the constitutional right is clearly established, and it would be clear to a reasonable officer that his conduct was unlawful in the situation this officer confronted.  *Id.* at 202.

### B.    Plaintiff's Excessive-Force Claim

Here, Plaintiff's claim of excessive force must be analyzed under the Due Process clauses of the Fifth and Fourteenth Amendments.[2]  Excessive-force claims brought by pretrial detainees are analyzed under an objective reasonableness standard pursuant to the Supreme Court's decision in *Graham v. Connor*, 490 U.S. 386 (1989).  *See also Gainor v. Rogers*, 973 F.2d 1379, 1387 (8th Cir. 1992).  For Plaintiff to state an excessive-force claim under § 1983, he must "'allege the violation of a right secured by the Constitution and laws of the United States[;] [s]pecifically [his] excessive force claim must allege that the defendants violated [his] Fourth Amendment rights."  *Mayard v. Hopwood*, 105 F.3d 1226, 1228 (8th Cir. 1997) (citations and quotations omitted).

---

[2]    Plaintiff contends that his excessive-force claim is based upon his constitutional right to be from cruel and unusual punishments under the Eighth Amendment.  However, the alleged assault here did not occur after Plaintiff was convicted of a crime and was being "punished," at least not in the Eighth Amendment sense of punishment.  Plaintiff's constitutional right to be free from cruel mistreatment by the police after he was taken into custody but before imprisonment falls within the Due Process clause of the Fifth and Fourteenth Amendments.

Defendants argue that the allegations of the Complaint establish that the officers conducted themselves in an objectively reasonable manner under the circumstances.  They argue that Plaintiff was "a self-destructive uncooperative inmate" and "some 'force' was necessary in light of [Plaintiff's] continued self-destructive behavior of hitting his head against the wall and his lack of cooperation in 'acting' as though he was unconscious."  (Doc. No. 12 at 15.) They further argue that the force used must have been objectively reasonable because Plaintiff did not suffer any visible injury, did not require medical treatment, had no permanent injury, and did not make any complaints at the time. (*Id.*)

The problem, of course, with this argument is that it fails to assume that Plaintiff's version of the facts is true and, instead, substitutes Defendants' version of the incident based on matters outside the pleadings.  The Complaint alleges that the Plaintiff was fully cooperative and that he suffered various injuries because the officers beat him, dragged his face along the wall, and slammed his head and face into the end corner of the hall between the pre-booking and booking areas.  (Doc. No. 1, Attach. 3.)  In light of the fact that we must, for purposes of these motions to dismiss, accept Plaintiff's allegations as true, we cannot conclude that the force the individual Defendants allegedly used was objectively reasonable.  Thus, Plaintiff has stated an excessive-force claim for which relief may be granted and the Ramsey County Defendants' motions to

dismiss Plaintiff's excessive-force claims against the individual Defendants should be denied.

The individual St. Paul Police Department Defendants Distel and John Doe II argue that they are entitled to dismissal on the ground of qualified immunity because, even if the Ramsey County Defendants' actions involve the use of excessive force or other conduct giving rise to a constitutional claim, Distel and John Doe II were not in any position to prevent or stop that conduct.  Again, this Court must ask whether the Complaint—viewed in the light most favorable to the Plaintiff, taking the allegations set forth therein to be true, and granting all reasonable inferences in Plaintiff's favor—states a claim that Distel and John Doe II used force that was objectively unreasonable under the circumstances. *See Chambers v. St. Louis City*, 247 Fed. App'x 846, 848 (8th Cir. 2007) (citing *Mayard*, 105 F.3d at 1228).

It is true that Plaintiff has not specifically alleged that Distel and John Doe II physically assaulted him in the manner that he alleges Officers Frerich and John Doe I did—by hitting him with closed fists and kicking him while he was handcuffed, dragging through a hallway, and otherwise assaulting him.  Rather, he alleges that Distel and John Doe II "stood in the entry of the cell blocking anyone (inmates or others) from seeing the assault/battery being inflicted upon [him]."  (Doc. No. 1, Attach. 3 at 1.)  A reasonable inference to be drawn from this allegation is that Distel and John Doe II were not only complicit in the alleged

13

assault, but also actively attempted to screen others from observing that it was taking place.  Thus, it can reasonably be inferred, from the face of the allegations in the Complaint, that these two Defendants were participating in the assault by aiding in its progression.  Distel and John Doe II have failed to provide this Court with any authority indicating that an excessive-force claim premised on such conduct fails to state a claim for which relief may be granted.  Therefore, their motion to dismiss on this ground should be denied.

### C.    Plaintiff's Deliberate-Indifference Claim

The individual Ramsey County Defendants also address Plaintiff's contention that his constitutional rights were violated as a result of the alleged failure to provide him adequate medical attention for the injuries suffered during his alleged assault.  They contend that they are entitled to qualified immunity on this claim because Plaintiff cannot "show 1) he suffered from an objectively serious medical need and 2) defendants knew of the need yet deliberately disregarded it."  (Doc. No. 12 at 17.)  Thus, they argue that Plaintiff has stated no constitutional claim under the Fourteenth Amendment's Due Process Clause that the individual Defendants were deliberately indifferent to Plaintiff's serious medical needs.

"Deliberate indifference includes something more than negligence but less than actual intent to harm; it requires proof of a reckless disregard of the known risk."  *Moore v. Duffy*, 255 F.3d 543, 545 (8th Cir. 2001) (quotations and

14

alterations omitted).  The question for this Court to consider is whether the Complaint, taken in the light most favorable to Plaintiff, alleges that the Ramsey County Defendants recklessly disregarded a known risk to Plaintiff's health and safety.

Because we must accept the allegations of the Complaint as true, this claim cannot be dismissed on the pleadings alone.  Plaintiff has, at this stage, at least raised a claim of "deliberate indifference."  He alleges that (1) while the assault was going on he informed the individual Ramsey County Defendants that he had recent neck/spine surgery on February 15, 2008, but they disregarded this and continued the assault although he was crying and begging them to stop; (2) he informed a nurse from the jail named "Rob" about the beating, and the prior surgery, but the nurse stayed away from him and ignored his request for help; (3) he sustained bruising on his ribs on the right side of his body, as well as on his right thigh, and also had facial scratches and bruising under his right eye. (Doc. No. 1, Attach. 3.)

The individual Ramsey County Defendants, however, say that the only visible injury to the Plaintiff was a mark on Plaintiff's forehead, but this was from his own misconduct, not from any assault, and it did not require any medical treatment.  They also argue that the Plaintiff did not tell "Nurse Rob" about any other injuries, and Nurse Rob did a proper medical examination of the Plaintiff shortly after being called, including ordering an X-ray due to Plaintiff's complaint

15

about neck pain.  But, because these matters were submitted through materials outside the pleadings that this Court has declined to consider for purposes of these motions, Defendants' contradictory version of the facts cannot form the basis of a Rule 12(b)(6) dismissal for failure to "state a claim" for which relief may be granted.  Thus, Defendants' motions to dismiss should be denied to the extent they seek dismissal of Plaintiff's deliberate-indifference claim.

Although the Complaint does state the foregoing claims against the individual Defendants that survive, at the Rule 12(b)(6) stage, a motion to dismiss on qualified-immunity grounds, the individual Defendants may still raise the qualified-immunity defense in a properly presented summary judgment motion when the record is adequately developed.  Qualified immunity is a matter of law for the Court to decide, and should ordinarily be decided by the Court long before trial.  *Hunter v. Bryant*, 502 U.S. 224, 228 (1991).  Plaintiff's burden on summary judgment will of course be heavier than the one he faces in overcoming this motion to dismiss because we will then take as true only those facts which are supported by the record.  *See Wilson v. Lawrence County*, 260 F.3d 946, 951 (8th Cir. 2001).  This Court takes no position on whether Plaintiff, after sufficient discovery were conducted, could survive a motion for summary judgment on these claims.

## VII.   PLAINTIFF'S CLAIM SHOULD NOT BE DISMISSED BECAUSE OF AN ALLEGED FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

The Ramsey County Defendants argue that Plaintiff's claims should be

dismissed because he failed to exhaust his administrative remedies. They argue that this result is required by language in the Prison Litigation Reform Act ("PLRA") stating that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

"The PLRA's exhaustion requirement is not a heightened pleading requirement." *Nerness v. Johnson*, 401 F.3d 874, 876 (8th Cir. 2005) (citing *Wyatt v. Terhune*, 315 F.3d 1108, 1117 (9th Cir. 2003)).  Rather, the exhaustion requirement is an affirmative defense the defendant has the burden to plead and prove. *Id.* "Because exhaustion is a matter of abatement in an unenumerated Rule 12(b)(6) motion, a court may look beyond the pleadings to decide disputed issues of fact." *Thomas v. Maricopa County Bd. of Supervisors*, No. CV 07-0258-PHX-DGC (DKD), 2007 WL 2995634, *3 (D. Ariz. Oct. 12, 2007) (citing *Wyatt*, 315 F.3d at 1119-20).  To address an exhaustion argument in a pre-answer motion to dismiss, it is at least arguable that the court may consider a limited set of materials outside the pleadings, such as materials that are part of the public record, without converting a motion to dismiss into a summary judgment motion. *See Little Gem Life Sci., LLC v. Orphan Med., Inc.*, 537 F.3d 913, 916 (8th Cir. 2008); *cf. Casazza v. Kiser*, 313 F.3d 414, 418 n.3 (8th Cir. 2002) (stating that in considering a "jurisdictional attack" on a plaintiff's suit, "a

district court may consider matters outside the pleadings and not convert the motion to dismiss into a motion for summary judgment"); *Thomas*, 2007 WL 2995634, at *3.  Doing so, however, would not—on a motion to dismiss on the ground that a plaintiff failed to exhaust administrative remedies—relieve a defendant of the burden of proving lack of exhaustion by demonstrating that remedies were available to the plaintiff and that he failed to avail himself of them. *See Thomas*, 2007 WL 2995634, at *3.

Here, the materials submitted in support of the Ramsey County Defendants' motion do not explain to the Court what administrative remedies were available to Plaintiff at the LEC.  Even if such an administrative remedy existed, the Ramsey County Defendants make no effort to explain whether it would be available to a detainee at the LEC after he was released from the custody and control of the LEC, as Plaintiff had been at the time he filed his Complaint.  *Cf. Kerr v. Puckett*, 138 F.3d 321 (7th Cir. 1998) (explaining that the PLRA does not require a detainee to exhaust administrative remedies for alleged constitutional violations after the detainee is released).  Thus, the Ramsey County Defendants failed to meet their burden to establish that Plaintiff had administrative remedies available to him and failed to avail himself of them. Their motion should be denied on this ground.

## VII.   PLAINTIFF'S CLAIM OF MUNICIPAL LIABILITY SHOULD BE DISMISSED

Plaintiff has also brought what can be described best as municipal-liability

claims against the "Ramsey County Sheriff's Office" and the "St. Paul Police Department" for the assault and the damages to Plaintiff.  (Doc. No. 1, Attach. 3 at 1.)  The St. Paul Police Department ("Department") argues that Plaintiff's municipal claims should be dismissed because the Department is "not a person or entity and therefore lacks the capacity to be sued" because it is merely a department of the City of St. Paul.  However, the Department has submitted no support at all for its contention that, as a matter of law, it lacks the capacity to be sued.  All it has seen fit to provide the Court is a sentence in its Memorandum in which it informs the Court that it "is not a person or entity."  (Doc. No. 17.)  Given this lack of support offered by the Department in support of its motion on this ground, this Court declines to consider the Department's argument.

The Department and the Ramsey County Sheriffs Office argue that, even if they are municipal parties properly subject to suit under § 1983, Plaintiff has not properly stated a claim against these governmental entities in the Complaint for which § 1983 liability can be found.  Although a municipality cannot be held liable in a § 1983 claim under a theory of respondeat superior, § 1983 liability against a municipality has been recognized for a failure to train its employees and for deliberate indifference to its employees' unconstitutional conduct.  *City of Canton v. Harris*, 489 U.S. 378, 381 (1989).  As the Defendants recognize, a failure-to-train claim of this sort will rise to § 1983 liability when the failure is found to be a result of the municipality's policy or custom.  *Id.* at 388.  A deliberate-indifference

19

claim under § 1983 can be established by evidence that the municipality was aware that its procedures were inadequate, or the inadequacies were obvious, and that the inadequacies were likely to result in constitutional violations. *Id.*

Here, Plaintiff would have to satisfy three requirements before such a § 1983 against either municipality could be found: (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to, or tacit authorization of such conduct by the governmental entity's policy-making official after notice to the officials of the misconduct; and (3) the Plaintiff's injury by acts pursuant to the governmental entity's customer, i.e., proof that the custom was the moving force behind the constitutional violation. *See Mettler v. Whiteledge*, 165 F.3d 1197, 1204 (8th Cir. 1999).

Even allowing for a liberal reading of this *pro se* pleading, the Complaint does not contain even the barest allegations that there was a custom, practice, or policy on the part of either municipality to violate Plaintiff's constitutional rights. Plaintiff has not only failed to allege in the Complaint that there was any such custom, practice, or policy, but he contends that he does not have to have any such proof: "I also as a plaintiff should not have to prove that defendants have a custom, practice or policy of violating constitutional rights.  I personally experienced the violation of my 8th Amendment right of Cruel and unusual punishment and excessive force as stated in my original complaint."  (Doc. No.

25.)  But the issue of whether a plaintiff's individual constitutional rights were

violated by the police is separate and distinct from whether a municipality is

responsible for that violation.  *Collins v. City of Harker Heights*, 503 U.S. 115,

120 (1992).  Plaintiff has not stated a *Monell* claim against the municipalities for

which relief can be granted.  Thus, the claims that the Ramsey County Sheriff's

Office and the St. Paul Police Department should be held liable for the alleged

violation of Plaintiff's constitutional rights by their employees should be

dismissed.[3]

## IX.  RECOMMENDATON

Based on the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED THAT:**  The Motions of the Ramsey

County Defendants (Doc. No. 8) and the St. Paul Police Department Defendants

(Doc. No. 15) to dismiss the Complaint be **GRANTED IN PART** and **DENIED IN**

**PART**, as follows:

1.  The municipal Defendants Ramsey County Sheriffs Office and St. Paul

    Police Department be **DISMISSED**.

2.  The motion to dismiss the Complaint against the individual Defendants

    be **DENIED**.

---

[3]    Since the Complaint against the municipal Defendants should be
dismissed for failure to state a claim under *Monell*, the Court does not address
Ramsey County's alternative argument that it is entitled to vicarious official
immunity through the alleged official immunity of its employees.

Date: January 23, 2009

*s/ Jeffrey J. Keyes*
JEFFREY J. KEYES
United States Magistrate Judge

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by February 10, 2009, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under this rule shall be limited to 3500 words.  A judge shall make a de novo determination of those portions of the Report to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.